**Travis BURKS, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 13–81–292–CR.**

Court of Appeals of Texas, Corpus Christi.

Aug. 26, 1982.

Discretionary Review Granted Jan. 5, 1983.

The appellant challenges the sufficiency of the evidence to support the conviction. Specifically, he contends that the evidence is insufficient to prove that he possessed the instrument set forth in the indictment with intent to defraud and harm, a necessary element under § 32.21(b) of the Penal Code, or that he possessed the instrument with intent to utter it, a necessary element under § 32.21(a)(1)(C).

The indictment alleged that the appellant:

"on or about October 4, 1978, did then and there unlawfully and with intent to defraud and harm, forge the writing duplicated below, which purported to be the act of another who did not authorize that act, by possessing it with intent to utter it and while knowing it was forged."

To sustain a forgery by possession conviction, the evidence must show that the accused with the intent to defraud or harm another, possessed a forged writing with the intent to utter it. *McFarland v. State*, 605 S.W.2d 904, 907 (Tex.Cr.App.1980); *Cadd v. State*, 587 S.W.2d 736, 729 (Tex.Cr. App.1979); Tex.Penal Code Ann. § 32.-21(a)(1)(C) and (b) (Vernon 1974). The burden is upon the State to prove every element of the offense charged. *Pfleging v. State*, 572 S.W.2d 517, 519 (Tex.Cr.App. 1977).

This is a circumstantial evidence case. The trial judge charged the jury on "circumstantial evidence."

It is well settled that a conviction based on circumstantial evidence cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except that of the guilt of the accused, and proof amounting only to a strong suspicion or mere probability is insufficient. *Flores v. State*, 551 S.W.2d 364, 367 (Tex.Cr.App. 1977).

However, in circumstantial evidence cases it is not necessary, in order to sustain the conviction, that every fact point directly and independently to the guilt of the accused. It is enough if the conclusion is

Warren Pennington, Donald W. Rogers, Jr., Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Houston, for appellee.

Before BISSETT, UTTER, and KENNEDY, JJ.

## OPINION

BISSETT, Justice.

This is an appeal from a conviction for forgery by possession. Tex.Penal Code Ann. § 32.21(a)(1)(C) and (b) (Vernon 1974). Punishment was assessed at imprisonment for life upon the jury's finding that the appellant had been previously convicted of two felonies as alleged in the indictment.

warranted by the combined and cumulative force of all the incriminating circumstances. *Jones v. State,* 442 S.W.2d 698, 702 (Tex.Cr. App.1969).

In the case at bar, the evidence established that on September 29, 1978, 2500 checks printed for Fish Engineering & Construction, Inc. (hereinafter "Fish Engineering") disappeared from a delivery truck. On either October 4, 1978, or on October 24, 1978, there being a conflict in the record as to the true date, the appellant, along with three other persons, was arrested for investigation of narcotics. In the appellant's wallet, an officer of the Houston Police Department found the check which resulted in this prosecution, and a driver's license issued to Robert Lee Boykin, Jr. Another officer found between seventy-five to one hundred checks, some blank and some partially completed, inside a newspaper on the floorboard of the truck driven by the appellant. The officers later learned that the checks were part of the missing Fish Engineering checks.

The check found in the appellant's wallet was Fish Engineering Check No. 97492, made payable to the order of Robert Lee Boykin, Jr., was dated September 28, 1978, was drawn on the Pasadena National Bank, Pasadena, Texas, and was purportedly signed by Ed Sanders. It was purportedly endorsed by Boykin. Under the endorsement appeared an address, a driver's license number, and a phone number. The evidence conclusively established that the check (State's Exhibit No. 2) was a forgery, although there was no evidence to identify the person responsible for the forgery. The phone number was not Boykin's.

Officer A.D. Weston, of the Houston Police Department, testified that on October 24, 1978, while performing his duties on routine patrol, he came in contact with the appellant. When the officer initially saw him, the appellant was in a pickup truck that had stopped in an intersection along with another vehicle, both of which were blocking traffic. Having determined that an investigation was in order, Officer Weston and D.A. Baskin, his partner, dismounted their police vehicle and approached the pickup in which the appellant sat behind the steering wheel; they observed a man standing on the side of the pickup drop "the vial, the brown medicine bottle" into the bed of the pickup. This man and the appellant were then immediately arrested.

Officer Baskin testified that upon the arrest of the appellant on October 4, 1978, he asked the appellant for identification, whereupon, according to him:

"He (the appellant) pulled his billfold out of his back pocket and proceeded to go through it and at which time he looked up and said he didn't have a driver's license. And I noticed when he was going through it that I could see a driver's license in his wallet and I asked him what is that. And he said, 'Oh, here it is.' And he pulled it out."

On this driver's license appeared the name Robert Lee Boykin, Jr.; however, the appellant insisted that the driver's license was his own. Baskin observed that the appellant looked strange and acted "extremely nervous." Baskin also noticed that the picture on the driver's license was not that of the appellant.

Robert Lee Boykin, Jr., testified that he was employed at Smith Industries and resided at 2222 Hutton Street in the City of Houston. He stated that the driver's license which was shown to him at the trial (State's Exhibit No. 8), which was the same driver's license which was on the appellant's person, was his own, but that it had been lost for about a year and a half. He also said that the signature on the face of the license was his but that the signature on the back was not.

Thomas Forehand, another State's witness, testified that at the time in question he was employed as a comptroller for Fish Engineering. He identified State's Exhibit No. 1 as a number of checks belonging to the company. He further testified that. though the name Ed Sanders appeared as a signature on the check, Sanders was not

authorized to sign a check drawn on any Fish Engineering account.

The State, in its brief, argues:

"The evidence set out above totally disproves Appellant's argument that it was not shown that he possessed a forged check with intent to defraud or harm or with intent to utter. The check he had in his wallet (State's Exhibit No. 2) had quite obviously been detached from the batch of checks comprising State's Exhibit No. 1. It had been filled out and endorsed. Appellant also had Boykin's driver's license and had transferred information from the driver's license onto the back of the check. However, Boykin's telephone number, which apparently was not on his driver's license, was written on the check incorrectly. When the arresting officer inquired of him, Appellant pretended that he was Robert Lee Boykin. In short, contrary to Appellant's position, the evidence was sufficient to show Appellant's fraudulent intent. *Baker v. State,* 552 S.W.2d 818 [ (Tex.Cr. App.1977) ]."

We do not agree with the State's argument.

Reliance by the State on *Baker v. State,* 552 S.W.2d 818 (Tex.Cr.App.1977) is misplaced. In that case, the defendant asked the checker in a convenience store "to cash a check for him, telling her it was 'for his uncle.'" The check, which was a forged document, was cashed, and the defendant was convicted for "forgery by passing." That is not the case here. Nor are *Wilson v. State,* 605 S.W.2d 284 (Tex.Cr.App.1980), *Cadd v. State,* 587 S.W.2d 736 (Tex.Cr.App. 1979) and *Fifer v. State,* 451 S.W.2d 757 (Tex.Cr.App.1970) controlling in the instant case. In each of those cases, the defendant either 1) attempted to cash a forged check; 2) cashed a forged check; or 3) asked a bank's cashier to approve a forged check so that it could be cashed by a teller at the bank. None of the fact situations involved in *Baker, Wilson, Cadd* or *Fifer* are present in the case now before us in this appeal. There is no evidence that the appellant cashed or attempted to cash the forged check found in his possession. To the contrary, the comptroller for Fish Engineering testified that none of the 2500 missing checks were cashed. The appellant did not testify at the trial. There is nothing in the record which reflects that the appellant made any statement from which it can be inferred that he knew the check was forged. With respect to the check in question (State's Exhibit No. 2), the blank where the amount of money is normally shown in words was filled in by the use of a checkwriting machine; the blank for the name of the payee, the date of the check, and the amount of money to be shown in figures were filled in by use of a typewriter. The signature of the purportedly authorized person who signed the check is in handwriting as is the endorsement, address and phone number on the back of the check. No evidence was introduced to show that any of the handwriting appearing on the check was that of the appellant.

■ Although the State proved that the appellant possessed a forged check, the evidence is insufficient to prove that the appellant knew that the check was forged or that he possessed the check with an intent to utter it or that he intended to harm or defraud another. We fail to perceive how possession with the intent to utter can be proven absent evidence that the accused passed or attempted to pass the forged writing. See *Pfleging v. State,* 572 S.W.2d 517 (Tex.Cr.App.1978), and *Stuebgen v. State,* 547 S.W.2d 29, 32 (Tex.Cr.App.1977).

We hold that mere possession of a forged writing, as is the case here, is insufficient to sustain a conviction under § 32.21(a)(1)(C) and (b) of the Penal Code.

Having found that the evidence is insufficient to support the conviction, the judgment of the trial court is set aside and reformed to show an acquittal. *Waldon v. State,* 579 S.W.2d 499, 502 (Tex.Cr.App. 1979).