**Coy CLIFTON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–83–00597–CR.**

Court of Appeals of Texas, San Antonio.

Feb. 20, 1985.

Richard Langlois, San Antonio, for appellant.

Sam Millsap, Jr., Emil Holiner, Edward F. Shaughnessy, III, San Antonio, for appellee.

Before CADENA, C.J., and ESQUIVEL and BUTTS, JJ.

## OPINION

BUTTS, Justice.

This is an appeal from a conviction for the offense of forgery, TEX.PENAL CODE ANN. § 32.21(a)(1)(B) (Vernon 1974). After a finding of guilty by the jury, appellant entered his plea of "true" to an enhancement allegation in the indictment, and the trial court assessed punishment at five years imprisonment.

Appellant presents five grounds of error, the first challenging the sufficiency of the evidence to support the conviction and four attacking the court's admission of certain photographs of appellant into evidence.

 The indictment provides in pertinent part:

... on or about the 22nd day of June, 1983, [appellant] did then and their knowingly and intentionally with intent to defraud and harm another, PASS TO LISA BAKER a WRITING NAMELY: A CHECK that had been MADE so that it purported to be the act of another who did not authorize the act, and the said defendant knew said CHECK was forged

and which said CHECK is to the tenor following:

[Attached is the check which is the subject of this conviction.]

\*    \*    \*    \*    \*    \*

The forgery statute encompasses many kinds of forgery. *See* Commentary following statute. Forgery by passing is but one kind of forgery, § 32.21(a)(1)(B). This is the offense charged against appellant which the State was bound to prove. The State relied upon the "parties" statutes, TEX.PENAL CODE ANN. §§ 7.01 and 7.02(a)(2) (Vernon 1974). It had the burden to show that appellant was criminally responsible for the conduct of another, and the trial court charged the jury on the requisites of proof necessary to find criminal responsibility as a party to the offense of forgery by passing. *See Pitts v. State,* 569 S.W.2d 898, 900 (Tex.Crim.App.1978). It is not appellant's contention that the criminal responsibility (parties) statutes are inapplicable in forgery cases. Rather he argues that proof in this case showed only that he was merely present when the offense was committed by another person.

■ To sustain the conviction for passing a forged check there must be proof that the check was forged. Section 32.21(a)(1)(B). To prove that a check is forged it is necessary to prove that the purported maker did not authorize the defendant or another to make the check. Section 32.21(a)(1)(A)(i). *Payne v. State,* 567 S.W.2d 4, 5 (Tex.Crim.App.1978), citing *Reed v. State,* 533 S.W.2d 35 (Tex.Crim.App.1976). (The required element of knowledge is not an issue in this case.)

In deciding whether there is sufficient evidence to sustain a conviction, this court must review the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Bonham v. State,* 680 S.W.2d 815, 819 (Tex. Crim.App.1984); *Acevedo v. State,* 633 S.W.2d 856, 857 (Tex.Crim.App.1982). In this case the State presented the testimony of Minerva Mendez, a co-defendant who

was an accomplice as a matter of law, and the jury was so instructed.

■ It is required by TEX.CODE CRIM.PROC.ANN. art. 38.14 (Vernon 1979) that an accomplice witness' testimony be corroborated. The test to determine if there has been sufficient corroboration of that testimony is to eliminate the accomplice testimony from consideration, and if there is other incriminating evidence tending to connect the accused to the commission of the offense, there is sufficient corroboration. *Hernandez v. State,* 578 S.W.2d 731, 732 (Tex.Crim.App.1979); *see also Infante v. State,* 612 S.W.2d 603, 605 (Tex.Crim.App.1981); *Sheets v. State,* 606 S.W.2d 864, 866 (Tex.Crim.App.1980). The corroborative testimony need not directly link the accused to the crime or be sufficient in itself to establish guilt; corroboration need only make the accomplice's testimony more likely than not. *Carrillo v. State,* 591 S.W.2d 876, 883 (Tex.Crim.App. 1979). *McManus v. State,* 591 S.W.2d 505, 513–514 (Tex.Crim.App.1979). The evidence of other witnesses is examined to ascertain if there is any inculpatory evidence which tends to connect the accused with the commission of the offense. *Infante, supra* at 605. The corroborating evidence may be circumstantial or direct. *Paulus v. State,* 633 S.W.2d 827, 843 (Tex. Crim.App.1981). It is not necessary that the corroborating evidence directly link the accused to the crime or be sufficient in itself to establish guilt. *Id.*

Lisa Baker, a cashier at the Consumers Commissary in Leon Valley, testified that Minerva Mendez on June 22, 1983, attempted to purchase two cases of cigarettes costing $456.12. She saw her write a check; however, the manager refused to cash it. Mendez signed the check "Frances Gormley." Baker stated she did not see appellant in the store. The check written for that amount is the subject check in this case.

Frances Gormley testified that in June her purse was stolen. Among its contents were a checkbook, the subject check that

Mendez had, a Consumers Commissary identification card, her social security card, and her driver's license. She stated she did not sign the subject check, nor did she authorize anyone to do so. Further she did not write the check nor give anyone permission to do so.

Mendez, the co-defendant and accomplice witness, said she met appellant, his wife and Richard Meyers in a parking lot at her "connection's" house. The appellant advised her the others made money by making checks, and she could do the same. Needing money for a "fix," Mendez, admittedly a long-time heroin addict, telephoned appellant on the morning of June 22, telling him she was without funds. He directed her to his house. She related that after she had bought some heroin with appellant's money, the appellant tacked up "like a bedsheet . . . light blue" and took several pictures of her. One of those polaroid pictures of her was in evidence. Then, she continued, the appellant cut one of her pictures "real small." On the kitchen counter he had "all kinds of stuff," such as a driver's license from which he extracted the official photograph and put in the one he had just taken.[1] Then he "glued" it back together. Appellant gave her the driver's license, social security card and three checks, all belonging to Frances Gormley. He inquired whether she knew how to make out a check.

Her testimony was that she saw appellant use "machines" to "cut out" other checks, making them from "scratch." Some of these checks were recovered from a briefcase by investigating officers. Mendez related that appellant drove her, his wife, and Meyers in his automobile to a Consumers Commissary in south Bexar County and then to the same kind of store on Broadway. At each of these she and appellant went inside, although separately. He watched her while she passed two checks, purchasing at each store two cases

of cigarettes. She testified that at the third store in Leon Valley he also went into the store, and when the manager refused to cash the check, she took the check and left hurriedly. She said the appellant passed her and told her to keep walking. She walked to the corner, while he got into his automobile and "took off." He circled in the car and came back to pick her up. They had driven about one-half block when apprehended by an officer.

Mendez admitted she had been twice convicted for forgery and had convictions for theft and shoplifting. She told the jury she was going to enter a guilty plea in this case and be sentenced according to the terms of a plea bargain.

Leon Valley police officer John Anderson testified he responded to a police dispatch regarding a suspected forgery. He received a description of the automobile and occupants and almost immediately saw the car which matched the description. Appellant and his wife were in the front seat, and Meyers and Mendez in the back seat with a briefcase also in back. He arrested all of them and impounded the car. It was later established that appellant owned it. Appellant disclaimed ownership of the briefcase.

Police officer Robert De La Garza assisted by taking fingerprints from the briefcase and its contents. One of the items found in the briefcase was a checkbook belonging to Frances Gormley. There was a purported Lone Star Brewery payroll check, dated June 17, 1983, in the sum of $348.00 the payee being Frances Gormley. There was evidence that Detective Cruz Morua found appellant's fingerprints on documents and checks located in the briefcase. Five of these items, including the Lone Star Brewery check, were admitted into evidence. Significantly the fingerprints of Mendez, Meyers and appellant's wife were not found on the documents.

1. The driver's license of Frances Gormley, admitted in evidence, contains no photograph; the space for a photograph is empty. Mendez stated that when she was placed in the back seat of the police car, she removed her polaroid picture from Gormley's license and ate it. Further she hid the incriminating identification cards under the back seat. That evidence was recovered later.

Morua also identified appellant's fingerprint on Gormley's checkbook.

Meyers claimed the briefcase as his own. He also stated he was the perpetrator of the instant offense, not appellant. He said he instructed Mendez and gave her the checks. Appellant and his wife, he said, were simply driving him to the commissary stores because he asked for the favor; he said that the couple planned to go sightseeing that day.

The jury is the exclusive judge of the credibility of the witnesses and of the weight to be given their testimony. *Bonham v. State, supra* at 819; *Daniels v. State*, 600 S.W.2d 813, 815 (Tex.Crim.App. 1980).

■ Eliminating the testimony of the accomplice witness, we examine the remaining evidence which may tend to connect the appellant to the commission of the offense:

1. Appellant's fingerprint found on Gormley's checkbook, which was in the recovered briefcase.

2. Appellant's fingerprints found on Lone Star Brewery check with Gormley's name as payee on it—also taken from briefcase.

3. Other checks and documents had his fingerprints on them—also taken from briefcase.

4. Meyer's fingerprints were not found on the checks and documents retrieved from the briefcase.

5. Mendez' polaroid picture, as described by her, recovered from briefcase.

6. Appellant, driver of his own automobile, arrested within minutes of the commission of the offense with Mendez, fleeing the scene.

We find the inculpatory evidence does tend to connect appellant with the commission of the offense. When, as here, the evidence tends to connect appellant with the alleged offense, it is sufficient to corroborate the accomplice witness' testimony.

■ In determining whether one participated as a party in committing an offense, the court may look to events occurring before, during and after the offense and reliance may be placed on actions of the parties which show an understanding and common design to do a certain act. *Tarpley v. State*, 565 S.W.2d 525, 529 (Tex.Crim. App.1978); *see also Wygal v. State*, 555 S.W.2d 465, 469 (Tex.Crim.App.1977).

■ Now considering all of the evidence presented, including that of the accomplice witness, we find the evidence is sufficient to sustain appellant's conviction as a party to the offense. It is plain that the jury chose to believe Mendez and to disbelieve Meyers, and that is their prerogative. If there is evidence which establishes guilt beyond a reasonable doubt, and the trier of fact believes that evidence, this court is not in a position to reverse the judgment on sufficiency of the evidence grounds. *Combs v. State*, 643 S.W.2d 709, 716 (Tex. Crim.App.1982). The first ground of error is overruled.

Appellant contends four polaroid photographs of appellant should not have been admitted into evidence, asserting their admission was error because a collateral fact was sought to be established by them. The photographs are close-ups of appellant. Upon comparison to Mendez' photograph it is apparent they are the same kind with the same background.

Meyers accepted the blame for the offense, stating that all of the items in the briefcase belonged to him, including the four photographs of appellant. He affirmed they were taken with the blue sheet as background, but he said he photographed appellant without any criminal plan in mind. He did not intend to use the pictures for identification purposes. He insisted that appellant had not committed the offense but that he, Meyers had. He insisted that appellant was innocent.

The trial court admitted into evidence the four polaroid pictures of appellant, taken against the blue sheet background, for the limited purpose of impeachment of Meyers. Appellant's objection to the admission contained as one base lack of relevancy. On appeal he calls the pictures "collateral" to

any issue. We believe this to be a relevancy or materiality argument on appeal and do not agree with the State that appellant waived objection to their admission.

■ On cross-examination Meyers testified that appellant was not aware of any of the check forging activities and further, was not present when Meyers took polaroid pictures for use in stolen identification documents, such as driver's licenses. Whether or not appellant participated as a party to the instant offense was a material, not a collateral issue, in the trial. *See Shipman v. State*, 604 S.W.2d 182, 184 (Tex.Crim. App.1980). Thus, it was the testimony of Meyers regarding appellant's non-participation in the forgery "business" that the State sought to impeach. We find the evidence of the four photos to be material to the issue of a scheme to pass forged checks by the appellant. When Meyers denied that appellant owned the briefcase containing items used in forgeries, and also testified that appellant was ignorant of any of the forgery activities and that he, Meyers, took Mendez' pictures, the witness Meyers could be properly cross-examined about the four pictures of appellant in an effort to impeach his stance that appellant was not involved in any manner with the forgery activities. The jury could then judge the credibility of the witness. We hold the admission of the photographs was not error because they were probative of the witness' credibility in this case. While it is settled that a witness may not be impeached on immaterial and collateral matters, *McManus v. State*, 591 S.W.2d 505, 524 (Tex.Crim.App.1979), the photographs were not an immaterial and collateral matter. We overrule the four grounds of error.

■ This court, upon examination of the judgment in this case, has found that the correct recitation of the verdict does appear, that is, that appellant was found "guilty of the offense of forgery as charged in the indictment." However, the judgment of the court recites that appellant is "guilty of the offense of forgery by possessing ..." The indictment charged appellant with the offense of forgery by passing; the jury found he committed that offense. This is a clerical error which is subject to reformation. Where, as in this case, the court has the necessary data and evidence before it for reformation, the judgment and sentence may be reformed on appeal. *Joles v. State*, 563 S.W.2d 619, 622 (Tex.Crim.App.1978); *accord Knight v. State*, 581 S.W.2d 692, 694 (Tex.Crim.App. 1979). Accordingly, the judgment is reformed to state "forgery by passing."

The judgment is affirmed as reformed.